## SIDNEY DAIRY PRODUCTS, INC v BOYER

Ohio Appeals, 2nd Dist, Shelby Co

No 111. Decided Nov 18, 1938

U. H. Doorley, Sidney, Kerr, Kerr & Kerr, Troy. for plaintiff-appellee.

Otto W. Hess, Napoleon, for defendant-appellant.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined as an error proceeding on defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Shelby County, Ohio.

The cause originated in the Common Pleas Court on June 11, 1934, by the plaintiff taking cognovit judgment against the defendant. Copy of the note was appended to plaintiff's petition and in substance provided as follows:

The note was dated December 5, 1931, calling for $1760.00, with interest at 7% per annum, payable to order of Sloan Brothers Development Company, and containing the usual cognovit provision waiving the issuing of service of process and authorizing confession of judgment in favor of the holder of said note. The note bore the following endorsements on the back thereof:

"Without recourse pay to the Napoleon Ice Cream Company or order.

"Sloan Brothers Development Company by J. A. Sloan, President.

"The Napoleon Ice Cream Company, by A. Dawood, Treasurer.

"Attest: P. R. Lankeman, Secretary."

On the day following the judgment, execution was issued to the sheriff of Henry County, and thereafter in due time return was made showing levy on real estate in the Village of Napoleon.

On April 11, 1935, defendant filed petition to vacate judgment and suspend lien, setting up claimed defenses and among other things praying that defendant be permitted to file answer to plaintiff's petition.

Thereafter defendant's application was attacked in various ways as was defendant's answer, which was permitted to be filed.

On April 29, 1938, defendant's amended answer was filed, to which plaintiff filed a reply.

The issues were finally joined on plaintiff's original petition, defendant's amended answer and plaintiff's reply.

The cause came on for trial before a visiting judge and a local jury, resulting in a verdict for the plaintiff in the sum of $1760.00, being the face of the note.

Thereafter and within time defendant filed motion for judgment notwithstanding the verdict, and also motion for new trial. Both motions were overruled and judgment entered on the verdict.

Thereafter and within time the cause was lodged in this court by reason of defendant's appeal on questions of law.

Counsel for defendant set forth in proper form the following assignments of error:

"1. The court erred in the admission of evidence offered by plaintiff-appellee over the objections of appellant.

"2. The court erred in excluding proper evidence offered by the appellant, to which the appellant excepted.

"3. The court erred in its charge to the jury.

"4. The verdict of the jury is not sustained by any evidence.

"5. The verdict of the jury is not sustained by sufficient evidence.

"6. The verdict is contrary to law.

"7. The verdict was in favor of the appellee when it should have been in favor of the appellant.

"8. The court erred in omitting and failing to charge the jury as to the issues between the appellee and appellant.

"9. The court erred in refusing to charge the jury as to the issues between the appellee and appellant.

"10. The verdict is contrary to the manifest weight of the evidence.

"11. The court erred in overruling appellant's motion for judgment non obstante veredicto."

While each and every assignment of error will be examined, we shall not follow in the order therein set out, but rather will take up the questions in what seems to us a preferable order.

In order to understand the issues, we will make a brief reference to the pleadings.

Plaintiff's petition was in the ordinary and usual form for cognovit judgment. The amended answer of the defendant contains three defenses:

The first defense raises the issue that the note was transferred by Sloan Brothers Development Company on June 6, 1933, after due, and thereafter was taken subject to all defenses which defendant might have against the original holder.

The first defense contains the further averment that on the 5th day of June, 1929, defendant entered into a written contract with the Sloan Brothers Development Company, by the terms of which that company sold to this defendant two lots, described as follows:

"Lots Nos. 9 and 10 in Sloan's Monroe Boulevard Park Subdivision of Section 10, Taylor Township, Wayne County, Michigan."

The purchase price of said lots amounted to $2640.00, with stipulation of a down payment of $880.00 and the balance of the purchase price, in the sum of $1760.00, which amount was conditioned to be paid within five years from the date of said contract; with interest at the rate of 6% per semi-annual payments. Further, that at the date of the signing of said contract the Sloan Brothers Development Company induced the defendant to sign and deliver to it two notes in the aggregate of $2640.00, evidenced by a note in the sum of $880.00 and a note in the sum of $1760.00, both due and payable in six months. It is further alleged that the Sloan Brothers Development Company falsely and fraudulently represented to the defendant, as an inducement to sign and deliver said notes to it, that the only purpose for said transaction and the only consideration therefor was for the benefit of the Sloan Brothers Development Company to enable them to keep their records separated. Further, that there was no consideration for the execution and delivery of said notes.

The second defense seeks to raise the issue of accord and satisfaction. Among other things, it is averred in the second defense that the above notes were renewed from time to time, the last renewal being on the 5th day of December, 1931. Shortly thereafter the $880.00 note was sold to the Commercial State Bank of Napoleon, Ohio. Defendant contends that this was in violation of an agreement with Sloan Brothers Company that the note was for record purposes only; that the same was not to be collected or negotiated; that within a few days following the sale of the $880.00 note to the bank. defendant was notified by the bank that it held said note.

It is further averred in the second defense that immediately following the claimed improper negotiation of the $880.00 note,

defendant made a hurried investigation relative to the Michigan lots which he had contracted to buy, and then, for the first time, learned of the false and fraudulent representations made to him to induce him to purchase said lots and to sign and deliver the said notes.

Thereupon, defendant demanded the return of said notes, the fulfillment of said contract, according to the terms thereof, or a complete cancellation thereof. Defendant further avers that after interviews it was finally agreed that if the defendant would pay the $880.00 note then held by the Napoleon bank, that Sloan Brothers Development Company would deliver over to defendant the second note in the sum of $1760.00 and thereafter all rights and demands either might have against the other would be fully settled and satisfied. Defendant avers that he paid the $880.00 note on or about December 22, 1931, and thereafter demanded the return to him of the $1760.00 note, which the Development Company failed, neglected and refused to cancel and deliver and to carry out the terms of said settlement agreement.

That thereafter on or about the 16th day of June, 1933, the development company wrongfully transferred the note to the Napoleon Ice Cream Company.

Defendant's third defense alleges fraud on the part of the Sloan Brothers Development Company in inducing the contract of purchase for the Michigan lots as well as the execution of the two notes. It is averred that the development company made the following false representations, all of which were believed by the defendant at the time to be true and which he now avers were false:

That said lots were a part of a tremendous home building enterprise in said subdivision, and that the same were located in the immediate vicinity of huge steel mills construction programs;

that said lots were insured and protected by policies of insurance against the life of this defendant;

and were of greater value than the purchase price of $2640.00,

were subject to resale at a tremendous profit to defendant,

and that water mains and sewage systems were installed,

money deposited and contracts let for paved streets and sidewalks.

After the case was tried and the trial court had given his general charge to the jury, he withdrew the second defense as not being supported by the evidence and

instructed the jury to give no consideration to the defense of accord and satisfaction. From the statements made by the trial court as disclosed through the record, as well as the brief of counsel for plaintiff, we are given to understand that the trial court based its action of withdrawing the second defense on the ground that there was not a completed accord and satisfaction. That is, that while there was evidence in support of the claim of an accord, there was no evidence of satisfaction. Apparently it was the view of the trial court and likewise of counsel for plaintiff, that it was not sufficient that defendant Boyer paid off the $880.00 note at the bank, but in order to be an accord and satisfaction it would be necessary to show that the $1760.00 note was turned over by the development company to Boyer before the elements of accord and satisfaction would be completed.

We are unable to follow this reasoning. It is our conclusion that when the evidence establishes the full performance of the agreement on one side and nothing remains to be done by the other side but to deliver up the evidence of indebtedness which is claimed to be settled, that the courts may decree a full and complete settlement.

However, we think the court was correct in withdrawing this defense from the consideration of the jury, but on different grounds.

This defense of accord and satisfaction being denied through plaintiff's reply, the burden rested upon the defendant to prove the same by a preponderance of the evidence.

We therefore look to the record to ascertain just what defendant presents as evidence of the agreement of accord and satisfaction and what was done thereunder.

On pages 47 and 48 of the record, the defendant presents testimony as to the heated controversy between himself and Mr. Sloan, president of the development company, relative to the claimed illegal negotiation of the $880.00 note, and also the claimed fraudulent misrepresentations through which the land contract for the purchase of the Michigan lots was induced; then follows with the claimed agreement as to the settlement of all differences.

The following is quoted verbatim from the bottom of page 48:

"Q. Now, what conversation did you have with J. A. Sloan at that time in your house?

A. He told me there wasn't anything I

could do about it. He said, 'I will be a good sport if you will. If you pay the one note at the bank and give me back my contracts, I will give you back the note'."

Then on page 48:
"Q. What note do you mean?
A. The big note $1600.00—$1670.00— I mean $1760.00, one $880.00 and one $1760.00.
Q. You told him you would?
A. I did."

Then in the center of the page:
"Q. What did you do following this conversation, did you go to the bank?
A. I went to the bank.
Q. What did you do at the bank, did you pay the $880.00 note?
A. I did."

It will be noted that the defendant, in unequivocal language, makes the statement that not only was he to pay the $880.00 note, but in addition he was to deliver to Mr. Sloan, of the Sloan Development Company, his land contract. He presents no evidence that he ever delivered or tendered the contract to any representative of the development company. The record very clearly discloses that defendant retained the contract and still had it at the time of the trial of this case. His copy of the contract was identified and introduced in evidence. It very clearly appears that defendant failed to do everything that he says he agreed to do as a condition of settlement. It further appears that the defendant did not pay off the $880.00 note at the bank, but gave a new note directly to the bank. Ordinarily this would be a payment, but in the instant case it appears that the Sloan Brothers Development Company signed the note along with Boyer. Counsel for the defendant urges that this signing of the note by Sloan was a purely voluntary act, not done in the presence of or with the knowledge of Boyer; in other words, that following the execution of the note by Boyer, Sloan appeared at the bank and informed the officials that he, or rather the development company was to sign the note, which was then done.

On page 51 of the record the defendant, Boyer, testifies that he had an arrangement with Mr. Gregg, cashier at the bank, that Sloan would go on the note. This testimony of Boyer may have come as a surprise to his counsel, as we note that no further interrogation was made following this statement.

Defendant does make statement in his testimony that the note had been taken up or paid, but when or how is not stated. This situation as to the $880.00 note is not so important except as it leaves a possible inference that Boyer did not immediately pay off the note as per his agreement. However, we do not base our judgment of this question on any of the circumstances surrounding the execution of the $880.00 note, but rather on the fact that Boyer did not deliver up his contract to Sloan as he states he was obligated to do and which we find to be a condition precedent to any claim that the accord was fully made on his part.

We find no error in the action of the trial court in withdrawing the second defense from the consideration of the jury.

The next question which we consider, in the final analysis is really a two-issue question:

First, the issue of fraud which if actionable and adequately proven, would be a complete defense against the original holders and their transferees if endorsed after due, or under any other condition through which they would not be a holder in due course, as that term is defined under §8157, GC.

Second, an issue is raised as to when the note was due, it being the contention of the defendant that under its terms and on its face it was due June 5, 1932, or six months after its execution on December 5, 1931. The evidence indicates that it was transferred by endorsement on or about June 16, 1933. Counsel for plaintiff maintain that the note was a renewal of an original note, executed June 5, 1929, and executed in connection with and in consideration of a land contract dated June 5, 1929, providing for payment of $2640.00 as follows: $880.00 prior to the delivery of the agreement and the remainder in payments, and the entire amount to be paid within five years from date of contract. According to the testimony of J. A. Sloan, the notes were in the nature of accommodation paper, but not necessarily to be paid for a period of five years from June 5, 1929. The present plaintiff claims that they were so informed at the time the note was negotiated to them and that copy of the land contract in question was furnished them as part of the transfer of title to the note. Plaintiff did not take judgment on the note until June 11, 1934, which was more than five years following the date of the execution of the land contract. The plaintiff in the instant action contends that under the state of the record the note was not in fact due so as to permit an action thereon until June 5, 1934.

In support of their contention the case of Jacobs v Mitchell, etc., 46 Oh St 601, is cited. The second syllabus of this case reads as follows:

"2. A made and delivered to B his promissory note for the payment of a certain sum of money thirteen months after date. They also, concurrently therewith, made and entered into a separate written agreement, that the note should not become due and payable until C (for whom B was acting as agent) should sell for A a certain number of bushels of oats at a certain price. Held: That an action for the note cannot be maintained until the terms of the concurrent written agreement have been complied with: and, further, that such is the rule in an action by a holder, who acquired his title with notice of the agreement."

The facts in the instant case may be distinguished from the reported case in that in the latter the concurrently executed agreement expressly provided that the note was not to become due until the performance of a certain condition; whereas in the instant case the land contract makes no reference whatever to the execution of any notes. Whether or not the direct evidence and the surrounding circumstances support the conclusion is a factual question for the determination of the jury.

Returning to the first issue and its scope, we have no difficulty in arriving at the conclusion that the jury, in the absence of any finding of evidence of actionable fraud, might render a verdict in favor of plaintiff regardless of the question of the due date of the instrument as presented under what we have designated as issue No. 2. In other words, the transfer of a negotiable instrument after due does not necessarily bar recovery. It does, however, enable the maker to interpose all defenses which he might have against the original holder. In the instant case the defendant did interpose his claimed defenses, some of which were predicated upon the claim of fraud. No special findings were made by the jury, and hence we are unable to know whether or not the jury based their conclusion upon the first or second issue or both. Evidence was produced pro and con on the question of fraud. The doors were thrown wide open without limit. Many of the allegations of claimed fraud could not properly be so designated. For instance, the seller of any commodity has the right to boost its product. Further, false statements to be actionable are limited to existing things or conditions and not to prognostications of the future. Of course, representations of existing contracts or money raised and deposited to do certain things are averments of existing things. After limiting the allegations of the answer relative to fraud to its legal limits, we find evidence presented on both sides. Defendant, in his testimony, went so far in his statements that he was asking the jury to believe that under the oral representations of the representatives of the development company he was not to be liable for anything that he signed. This, of course, is contrary to the averments of his answer, wherein he averred that he did enter into a land contract for the purchase of two lots located in a subdivision of Detroit. It is probable that defendant in his zeal so overstated his case in evidence that the jury discarded his testimony in its entirety.

After a careful reading of the testimony, we arrive at the conclusion that this issue of fraud is wholly a factual question and that there is sufficient evidence to warrant the finding of the jury.

This being the situation as it relates to the first issue, any errors appearing in the record as they pertain to the second issue would not avail.

The law is well recognized that where the verdict of a jury may be supported upon one issue and no finding of facts was returned through which a reviewing court may be advised as to which issue the jury based its verdict it will be presumed that the jury made its finding upon the issue wherein no errors affirmatively appear. Ohio Jurisprudence, Vol. 2 (Appeal and Error), §§675 and 777; also Cumulative Supplement to Vol. 2, same sections.

In the assignments of error complaint is made that the trial court erred in the admission of evidence offered by plaintiff-appellee over the objection of appellant. Specifically this refers to testimony offered by the plaintiff as to conversation between a representative of the plaintiff company and Mr. Sloan, the president of the development company, and all pertaining to the land sale contract, to the effect that by virtue of the land contract the notes were not to be collected for a period of five years after June 5, 1929. Objection was made that these claimed statements were not in the presence of Mr. Boyer and therefore should be excluded. It is our conclusion that the objection was well founded

and should have been sustained. The proper method for plaintiff to have presented this evidence was through the testimony of Mr. Sloan, and not through an officer of the plaintiff company repeating what Sloan told him. Sloan, in his deposition, did testify to these same facts in substance. We do not think that this evidence was of sufficient moment to render its admission prejudicial

The second specification complains of the trial court excluding evidence offered by the defendant. We find no reference to this in the brief, and hence we assume that this assignment of error is abandoned.

The third assignment complains of the charge to the jury.

The first complaint is that the court read to the jury §8157 GC. This is the section which defines "who is a holder in due course." We not only find no error in this part of the charge, but we think that the court very properly read this section of the Code. By so doing he could better explain to the jury what was meant by the phrase "who is a holder in due course."

Complaint is also made to the following statement made by the trial court in its charge to the jury:

"The time of payment as fixed by the note may be controlled by the separate written agreement entered into by the parties at the time of the execution of the note."

This part of the charge, in connection with other things, permitted the jury to determine whether or not under the state of the evidence, the land contract really extended the time of payment of the note for the period of five years.

As we have heretofore stated, this was a factual question and we think the court properly charged the jury thereon. However, even if this charge was improper, it cannot be prejudicial for reasons heretofore stated. We refer to the two-issue rule.

Complaint is made also that the court erroneously read §8623-80 GC, to the jury. This section relates to the authority of officers of a corporation to wind up its business after the articles of incorporation have been cancelled.

There was evidence that the articles of incorporation of the development company were cancelled for failure to pay their annual franchise tax. As to the date of cancellation, no evidence is presented: Under the state of the record we think the court very properly read this section of the Code to the jury.

We find no other matters specifically called to our attention except assignments of error 8 and 9, wherein complaint is made that the court erred in omitting and failing to charge the jury as to the issues and further, that the court erred in refusing to charge the jury as to the issues. We find nowhere in the record that counsel for defendant made any request for the court to charge, and hence there can be no error predicated upon assignment No. 9. It is the law that the court shall charge the issues between the parties. While the charge of the court is very short, we think it complies with this provision of the law. If counsel was of the opinion that any issue in the case was not adequately and understandingly presented to the jury, it became his duty to call the court's attention thereto and specifically request such additional charge was warranted under the pleadings and the evidence. We find no error under assignments 8 and 9.

Assignments Nos. 4, 5, 6, 7 and 10 have been heretofore discussed and need not be referred to again.

Assignment of error No. 11 refers to defendant's motion for judgment non obstante veredicto.

We have no difficulty in arriving at the conclusion that the court very properly overruled this motion.

We make the same observation as to assignments of error Nos. 12, 13 and 14.

Counsel for defendant raises the further question that plaintiff was not the owner of the note at the time the cognovit judgment was taken, and hence lacked the power to sue. This claim is predicated upon the evidence of the cashier of the Citizens National Bank of Sidney, Ohio, to the effect that the note in question was received by the bank on December 27, 1933, as collateral security for loan to the Sidney Dairy Products Company, Incorporated, and was delivered back to said company on the 23rd of September, 1935. The original action and cognovit judgment was dated June 11, 1934. This date would be within the time during which the cashier of the bank testified that the note was in their possession. The note itself on the back bears the following notation, which is in conformity to the rules of the Court of Common Pleas of Shelby County: "Note reduced to judgment this 11st day of June, 1934. D. F.

142

Mills, Judge Common Pleas Court, Shelby County, Ohio." It necessarily follows that the note at the time of taking the cognovit judgment must have been in the hands of counsel for plaintiff and by him presented to the trial judge. It is inferable from this situation that the note was temporarily released by the bank to the ▮▮ plaintiff company for the purpose of taking judgment. Under this situation, the plaintiff would have sufficient interest in the note upon which to institute action and take judgment.

It further appears that at the time of trial the note was in the possession of the plaintiff company, introduced in evidence and appears in the bill of exceptions as plaintiff's Exhibit 1. This claim of counsel for defendant is not well founded.

Finding no prejudicial error, the judgment of the trial court will be affirmed and costs of this proceeding adjudged against the appellant.

The cause will be remanded to the trial court for further proceedings according to law.

HORNBECK and GEIGER, JJ, concur.